WILLIAM A. NORRIS, Circuit Judge.
In late 1987, MaxPharma, Incorporated had an option to buy Hamilton Taft & Company’s stock from its then-owner, Connecticut General Corporation (“CIGNA”). MaxPharma was unable to arrange financing for the stock purchase using stock as collateral, but Howard Weil Financial Corporation offered to finance the stock purchase using a reverse repurchase (or “repo”) of a treasury bill (the “T-bill”), and the parties agreed to finance the stock purchase that way. Pursuant to that agreement, Hamilton Taft wired $5,000,000 to Howard Weil on January 28, 1988. The next day, Howard Weil used $4,900,000 of the $5,000,000 in Hamilton Taft’s account to purchase for Hamilton Taft a 90-day T-bill, having a face value of $5,000,000, which was immediately sold back to Howard Weil for $4,100,000 based on a reverse repo agreement under which Hamilton Taft would repurchase the T-bill in 90 days for the sale price plus interest. Finally, also on January 29,1988, Howard Weil wired $4,100,000 directly to MaxPharma, at the request of Hamilton Taft, so MaxPharma could purchase Hamilton Taft’s stock from CIGNA
After Hamilton Taft went into bankruptcy in 1991, Hamilton Taft’s trustee sought to avoid the 1988 reverse repurchase transaction between Hamilton Taft and Howard Weil. The bankruptcy court granted Howard Weil’s motion for summary judgment on the ground that § 546(e) of the Bankruptcy Code, 11 U.S.C. § 546(e), bars the trustee from avoiding the transfer of securities made by a stockbroker pursuant to a reverse repurchase agreement.[1] The district court affirmed for the reasons stated in the bankruptcy court’s opinion, and so do we.
I
The trustee’s principal argument on appeal is that § 546(f), and not § 546(e), controls this case because Congress intended § 546(f) to supersede § 546(e) with respect to repurchase agreements. See 11 U.S.C. § 546(f).[2] Howard Weil responds that § 546(f) supplements, but does not supersede, § 546(e), even though § 546(f) mentions repurchase agreements and § 546(e) does not. See id. § 546(e).
After reviewing both the statutory language and the legislative history, the bankruptcy court held that “section 546(f) was intended to address Repo transactions not already covered by section 546(e) rather than to narrow the application of 546(e).” 176 B.R. at 900. In particular, the bankruptcy court noted that “Section 546(f) protects additional participants in certain Repo transactions” who would not have been protected under the terms of § 546(e). Id. at 900. As a result, the bankruptcy court held that “a defendant that qualifies under 546(e) as a stockbroker [as Howard Weil does here] need not qualify under section 546(f) as a repo participant.” Id.
We agree with the bankruptcy court. In addition to the statutory language, the legislative history shows that § 546(f) was merely intended to augment § 546(e), not to supersede it by controlling repurchase agreements exclusively. The Senate Report states that § 546(f) was “not intended ... to affect the status of repos involving securities or involv *993 ing commodities as securities contracts ... and their consequent eligibility for similar treatment under other provisions of the code, such as the provisions giving protection to stockbrokers____” S.Rep. No. 65, 98th Cong., 1st Sess. 45, 49 (1988). Instead, Congress enacted § 546(f) to govern repurchase transactions that involved categories of participants not named in § 546(e): “the proposed amendments are intended to afford participants in the repo market the same treatment with respect to the stay and avoidance provisions of the Code that Public Law 97-222 [codified at § 546(e) ] explicitly provided stockbrokers____” Id. Indeed, our Bankruptcy Appellate Panel has already said that “the enactment of section 546(f) and its legislative history provides a further indication that section 546(e) was intended to apply to payments made in repo transactions.” Jonas v. Farmer Bros. Co. (In re Comark), 145 B.R. 47, 52-53 (9th Cir.BAP1992). We hold, therefore, that § 546(e) covers the transaction at issue in this case.
II
The trustee argues next that even if § 546(e) does cover the reverse repurchase transaction between Hamilton Taft and Howard Weil, the trustee is not barred from avoiding the T-bill transfer under § 546(e) because the transfer was not a “settlement payment.” Section 546(e) prohibits trustee avoidance of settlement payments to stockbrokers that are made at any time before the commencement of bankruptcy actions. 11 U.S.C. § 546(e). The trustee claims that Howard Weil’s payment of $4,100,000 to MaxPharma for Howard Weil’s repurchase of the T-bill from Hamilton Taft was not a “settlement payment” within the meaning of § 546(e) because the transaction did not complete a bilateral exchange between Howard Weil and Hamilton Taft. Put more simply, the trustee argues that Howard Weil failed to settle the transaction between Howard Weil and Hamilton Taft because Howard Weil wired the $4,100,000 to MaxPharma, rather than to Hamilton Taft.
The bankruptcy court called this argument “frivolous” because “[i]t is undisputed that the funds were transferred to MaxPharma at the direction of [Hamilton Taft]. In directing payment of the sale proceeds to MaxPharma, [Hamilton Taft] exerted dominion over the funds and used them for its own purposes.” 176 B.R. at 900. Indeed, the bankruptcy court noted that, from Howard Weil’s perspective, payment to MaxPharma was equivalent to payment to Hamilton Taft and fulfilled Howard Weil’s obligation under the reverse repo agreement. Id. In addition, the bankruptcy court noted that we have broadly construed the term “settlement payment” to “inelude[ ] a transfer of securities that completes a securities transaction.” 176 B.R. at 899 (quoting Jonas v. Resolution Trust Corp. (In re Comark), 971 F.2d 322, 326 (9th Cir.1992)). As the bankruptcy court recognized, there can be no question, then, that the T-bill transferred pursuant to the reverse repo agreement was a settlement payment within the meaning of § 546(e). In fact, to hold otherwise “would eviscerate section 546(e) and frustrate Congress’s intent in enacting it, by leaving the broker open to suit for doing nothing more than handling a securities transaction for the debtor.” 176 B.R. at 899. Again we agree with the bankruptcy court.
Ill
Finally, the trustee argues that his claim should be exempt from § 546(e)’s reach because the transfer at issue was fraudulent. But the bankruptcy court correctly recognized that the ethical nature of the transaction is irrelevant to our determination of the legal issues involved. 176 B.R. at 901. Section 546(e) explicitly excepts fraudulent transfers that are completed within one year of the filing of the bankruptcy petition.[3] Be *994 cause the reverse repo transaction at issue here was completed over two years before the filing of Hamilton Taft’s bankruptcy petition, the trustee cannot invoke the fraud exception to § 546(e).
The summary judgment in favor of Howard Weil is AFFIRMED.

. The text of § 546(e) reads, in pertinent part: "the trustee may not avoid a transfer that is a ... settlement payment ... made by or to a ... stockbroker ... that is made before the commencement of the case____" 11 U.S.C. § 546(e).

. Section 546(f) provides in pertinent part that "the trustee may not avoid a transfer that is a ... settlement payment ... made by or to a repo participant, in connection with a repurchase agreement and that is made before the commencement of the case...." 11 U.S.C. § 546(0. A "repo participant” is “an entity that, on any day during the period beginning 90 days before the filing of the petition, has an outstanding repurchase agreement with the debtor." 11 U.S.C. § 101(46). It is undisputed that Howard Weil's last transaction with Hamilton Taft ended over two years prior to Hamilton Taft’s bankruptcy petition, and so Howard Weil does not qualify as a "repo participant."

. Section 546(e) provides that a trustee may not avoid the type of settlement payment at issue here "except under section 548(a)(1) of this title.” 11 U.S.C. § 546(e). Section 548(a)(1) provides that
[t]he trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily -
(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor *994 was or became, on or after the date that such transfer was made or such obligation was incurred, indebted. 11 U.S.C. § 548(a)(1).